**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA ex *rel.* CLEARWATER METRICS LLC, | NO. _____ |
| Plaintiff-Relator, | COMPLAINT AND JURY DEMAND |
| v. | **Filed Under Seal** pursuant to |
| CAN USA INC., | 31 U.S.C. § 3730(b)(2) |
| Defendant. | |

## COMPLAINT

1. Relator ClearWater Metrics LLC ("Relator") brings this action on behalf of itself and the United States of America against Defendant CAN USA Inc. for violations of the federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

2. This action seeks to recover funds that were loaned to Defendant through the federal Government's Paycheck Protection Program ("PPP") and forgiven by the Government as a result of false applications.

3. CAN USA Inc. ("CAN USA") received Second Draw PPP loan forgiveness of over $2 million.

4. Had CAN USA included the employees of its foreign affiliates, it would not have been eligible for its Second Draw loan.

5. CAN USA should be required to repay the loans, interest, and processing fee with penalties.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1331, 1345.

7.      Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 31 U.S.C. § 3732(a), as one or more defendants transact business in this jurisdiction.

## THE PAYCHECK PROTECTION PROGRAM

8.      During the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). Section 1102 of the CARES Act contains a program called the Paycheck Protection Program ("PPP"), a program administered by the U.S. Small Business Administration ("SBA") to provide economic relief to small businesses nationwide adversely impacted by the coronavirus pandemic.

9.      Section 1102 of the CARES Act temporarily permitted SBA to guarantee 100% of the PPP loans. Section 1106 of the CARES Act provided for forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

10.     The CARES Act gives lenders delegated authority to process loan applications for PPP funding. SBA allowed lenders to rely on certifications of the borrowers in order to determine eligibility of the borrower and use of loan proceeds, and to rely on specified documents provided by the borrower to

-2-

determine qualifying loan amount, and eligibility for loan forgiveness.

11.    The Economic Aid Act (P.L. 116-260, in the Consolidated Appropriations Act of 2021), authorized and funded a Second Draw PPP Loan program.

12.    Borrowers had to submit documentation necessary to establish eligibility such as payroll processor records, payroll tax filings, form 1099s, income and expenses documentation.

13.    For Second Draw PPP Loans, lenders were compensated by the federal government via processing fees based on the balance of the financing outstanding at the time of final disbursement, in the amount of five (5) percent for loans of more than $50,000 and not more than $350,000, and in the amount of three (3) percent for loans above $350,000.

14.    Each borrower certified on the Second Draw loan applications that they were eligible to receive the loans under the program guidelines and that their applications and supporting documentation were accurate.

15.    Borrowers were later able to seek forgiveness of the loans if the funds were used for eligible payroll costs, payments on business mortgage interest payments, rent, or utilities during either the 8- or 24-week period after disbursement.

## PARTIES

16. Relator ClearWater Metrics LLC is a mission-driven firm dedicated to combating fraud, waste, and abuse of taxpayer dollars. It utilizes a hybrid of cutting-edge and traditional investigation methods to analyze a wide range of information sources to discover potential misuse of taxpayer dollars.

17. CAN Holdings Ltd. is the parent company of CAN (Offshore) Ltd. ("CAN UK"), CAN USA, and, upon information and belief, CAN West Africa LDA and CAN Middle East LLC (collectively, the "CAN Group").

18. Upon information and belief, at all relevant times, Michael J. Freeman wholly owned CAN Holdings Ltd. and was Chairman of the CAN Group.

19. CAN USA has locations at 171 Lodi Street, Hackensack, NJ 07601; 1800 Jutland Drive, Harvey, LA 70058; and 3000 Awesome Lane, LaPorte, TX 77571.

## PPP LOANS

20. CAN USA was approved for a First Draw PPP loan of $4,134,600 by Hancock Whitney Bank on April 15, 2020. It reported 217 jobs. The entire loan, including interest, was forgiven for a total of $4,181,803.

21. CAN USA was approved for a Second Draw PPP loan of $2,000,000 by Hancock Whitney Bank on January 25, 2021. It reported 199 jobs. The entire loan, including interest, was forgiven for a total of $2,027,342.

## AFFILIATION SCHEME

22.     When the PPP rules were first introduced, there was confusion regarding whether applicants with foreign affiliates were supposed to include their employees or revenues when considering eligibility. As discussed below, on May 5, 2020, the SBA issued guidance in one of the program FAQs indicating that they were included in the affiliation count, and on May 21, 2020, an Interim Final Rule was published that again clarified that foreign employees were to be included. 85 Fed. Reg. 30835, 30836. However, because the rule had been previously unclear, the SBA exercised enforcement discretion to not find a borrower ineligible under this calculation including foreign employees if it applied for the PPP loan prior to May 5, 2020. *Id.* at 30837.

23.     CAN USA was not eligible for the Second Draw loan because, when including employees of affiliated foreign entities, it exceeded the requisite size standard.

### A.     Application of the Affiliation Rules to Foreign Entities

24.     When multiple entities are operated under common ownership or management, the SBA generally applies "affiliation rules" that require the various entities to consolidate their employee count when evaluating their loan eligibility.

25.     Under the Interim Final Rule published and effective May 21, 2020,

"Paycheck Protection Program—Treatment of Entities With Foreign

Affiliates," the SBA clarified that:

> SBA's affiliation rules provide that in determining an entity's
> number of employees, employees of the entity "and all of its
> domestic and foreign affiliates" are included. As a result, in most
> cases, a borrower is considered together with its U.S. and foreign
> affiliates for purposes of determining eligibility for the PPP.... To
> provide further clarification of this methodology, SBA issued
> guidance on May 5, 2020 (FAQ 44) stating that an applicant must
> count all of its employees and the employees of its U.S. and
> foreign affiliates, absent a waiver of or an exception to the
> affiliation rules.

85 Fed. Reg. 30835, 30836.

26.    The Interim Final Rule, Section I, concluded, unequivocally, that "If an

applicant, together with its domestic and foreign affiliates, does not meet the

500-employee or other applicable PPP size standard, it is not eligible for a

PPP loan." *Id.*

27.    The Interim Final Rule repeated this requirement again in Section II:

> Therefore, to calculate the number of employees of an entity for
> purposes of determining eligibility for the PPP, an entity must
> include all employees of its domestic and foreign affiliates, except
> in those limited circumstances where the affiliation rules
> expressly do not apply to the entity. Any entity that, together
> with its domestic and foreign affiliates, does not meet the 500-
> employee or other applicable PPP size standard is therefore
> ineligible for a PPP loan.

*Id.* at 30836-37 (footnote omitted).

28.    The Second Draw PPP program adopted, in relevant part, these same

affiliation rules, except that the employee count was reduced from 500 to 300,

as was consistent with the change in the general eligibility requirements. 86

Fed. Reg. 3712, 3714-15 (January 12, 2021), codified in 13 C.F.R. § 121.

### B.    Affiliation Rule Waiver Requirements

29.    To avoid application of the affiliation rules, CAN USA would have to

meet one of three affiliation rule waiver requirements.

30.    Pursuant to **86 FR 3712, 3714-15 (Jan. 14, 2021)**, the affiliation rules

are waived under the PPP program for any of the following three reasons: (1)

any business concern with less than 300 employees that, as of the date on

which the loan is funded, is assigned a North American Industry

Classification System (NAICS) code beginning with the digits 72; (2) any

business concern operating as a franchise that is assigned a franchise

identifier code by the U.S. SBA; and (3) any business concern that "receives

financial assistance from a company licensed under section 301 of the Small

Business Investment Act of 1958," *i.e.*, a "small business investment

company." "Financial assistance" includes any type of financing listed in 13

C.F.R. § 107.50, including loans and equity. Paragraph 7(a)(36)(D)(iv) of the

Small Business Act (15 U.S.C. 636(a)(36)(D)(iv)).

31.    Upon information and belief, none of these waivers apply. CAN USA

was not assigned a NAICS code for a food and beverage business, nor has it

been assigned a franchise identifier code. Relator has also not found any

evidence that CAN USA received SBIC lending.

### C.    CAN USA was Affiliated with CAN UK and Possibly Other CAN Group Companies

32.    Under the SBA's PPP Affiliation Rules: "Concerns and entities are affiliates of each other when one controls or has the power to control the other, or a third party or parties controls or has the power to control both. It does not matter whether control is exercised, so long as the power to control exists."

33.    The "affiliation based on ownership" test states that:

> For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern.

34.    The "affiliation based on management" test states that:

> Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one of more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement.

35.    According to CAN USA's Texas Franchise Public Information Reports filed from 2019 to 2021, it was wholly owned by CAN Holdings, Ltd. The Texas Reports also list Michael Freeman as Chairman of CAN USA.

36.     Financial Statements prepared by CAN UK state that the "ultimate parent company of CAN (Offshore) Limited is CAN Holdings Limited" and that the "company is under the control of M J Freeman by virtue of his 100% ownership of the parent company."

37.     Accordingly, at least CAN USA and CAN UK are owned and operated by CAN Holdings Ltd. and Michael Freeman, if not also the Middle Eastern and African CAN Group subsidiaries.

### D.     Application of the Eligibility Test

38.     On its First Draw loan application, CAN USA reported 217 jobs. On its Second Draw loan application, CAN USA reported 199 jobs. These were just the domestic job counts for CAN USA—they do not include the employees of foreign affiliates.

39.     Financial Statements filed by CAN Holdings, Ltd. reported that the CAN Group had an "average monthly number of employees" of 660 in 2018, 669 in 2019, 668 in 2020, and 713 in 2021.

40.     In its own Financial Statements, CAN UK reported that its average monthly number of employees was 383 in 2018 and 414 in 2019.

41.     Accordingly, at all relevant times, CAN USA and its affiliates exceeded 300 employees and was ineligible for PPP lending.

## FALSE CERTIFICATIONS

42.    The Second Draw PPP Borrower Application Form required the applicant to certify in good faith that, *inter alia*:

(1) The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) and the Department of the Treasury (Treasury) implementing Second Draw Paycheck Protection Program Loans under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) and the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (the Paycheck Protection Program Rules).

(2) The Applicant, together with its affiliates (if applicable)... employs no more than 300 employees...

43.    The loan application also required applicants to report "Number of Employees (including affiliates, if applicable; may not exceed 300 unless "per location" exception applies)."

44.    CAN USA had to make these certifications and statements when applying for the Second Draw PPP loan. They were false when made because CAN USA failed to adequately disclose the employees of its foreign affiliates.

## CONCLUSION

45.    CAN USA was not eligible for the Second Draw PPP loan because, including foreign affiliates, it exceeded the 300-employee limitation. It should be required to repay the Second Draw PPP loans and interest that were forgiven by the federal government, plus processing fees and penalties.

## COUNT I
## VIOLATIONS OF 31 U.S.C. § 3729
## FALSE CLAIMS ACT

46.    Relator hereby incorporates and realleges all other paragraphs as if fully set forth herein.

47.    As set forth above, Defendant knowingly presented or caused to be presented false or fraudulent claims for payment or approval, in violation of 31 U.S.C. § 3729(a)(1)(A).

48.    As set forth above, Defendant knowingly made, used, or caused to be made or used, false records or statements material to false claims, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B).

49.    As set forth above, Defendants knowingly made, used, or caused to be made or used a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(G).

50.    Due to Defendant's conduct, the United States Government has suffered substantial monetary damages and is entitled to recover treble damages and a civil penalty for each false claim, record, or statement. 31 U.S.C. § 3729.

51.   Relator is entitled to reasonable attorneys' fees, costs, and expenses. 31 U.S.C. § 3730(d)(1).

## PRAYER FOR RELIEF

WHEREFORE, Relator prays for judgment against Defendant:

(a) awarding the United States treble damages sustained by it for each of the false claims;

(b) awarding the United States a maximum civil penalty for each of the false claims and statements;

(c) awarding Relator the maximum relator's share of the proceeds of this action and any alternate remedy or the settlement of any such claim;

(d) awarding Relator litigation costs and reasonable attorneys' fees and expenses; and

(e) granting such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Relator hereby respectfully demands trial by jury on all issues and counts triable as of right before a jury.

Respectfully submitted,

Darth M. Newman
Pennsylvania Bar No. 209448
**Law Offices of Darth M. Newman**

-12-

-13-

1140 Thorn Run Rd
P.O. Box 601
Coraopolis, PA 15108
Telephone: 412-436-3443
darth@dnewmanlaw.com

Jason Marcus (*pro hac vice* forthcoming)
Georgia Bar No. 949698
**Bracker & Marcus LLC**
3355 Lenox Road, Suite 660
Atlanta, Georgia 30326
Telephone: (770) 988-5035
Facsimile: (678) 648-5544
Jason@fcacounsel.com